671 A.2d 1161

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Gerald J. LAWSON, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 25, 1995.

Filed Feb. 16, 1996.

Alison Taylor, Assistant District Attorney, Carlisle, for Com., appellant.

William Braught, Carlisle, for appellee.

Before CAVANAUGH, KELLY and HESTER, JJ.

KELLY, Judge:

In this appeal, the Commonwealth asks us to determine whether the sentencing court erred by failing to sentence appellee, Gerald J. Lawson, to the mandatory minimum term of three years imprisonment and impose a fine upon him of at least fifteen thousand dollars in accordance with 18 Pa.C.S.A. § 7508(a)(3)(ii) following his convictions for possessing cocaine [1] and possessing cocaine with intent to deliver.[2] To answer this question, we must determine whether the Commonwealth proved by a preponderance of the evidence that appellee had been convicted of possessing at least ten and less than one hundred grams of cocaine with intent to deliver. We hold that the Commonwealth satisfied this burden and, therefore, the sentencing court erred in imprisoning appellee for a term of one to three years and fining him five thousand dollars based upon 18 Pa.C.S.A. § 7508(a)(3)(i). Accordingly, we vacate appellee's judgment of sentence and remand for resentencing.

The relevant facts and procedural history of this case are as follows. Shortly before 11:00 p.m. on January 14, 1994, Con-

[1] 35 P.S. § 780–113(a)(16).

[2] 35 P.S. § 780–113(a)(30).

rad Thompson phoned the Carlisle Police Department and informed Dispatcher Edward Martin that appellee was sitting inside a 1985 red Dodge Omni in front of the Molly Pitcher Hotel in Carlisle and in possession of a significant amount of crack cocaine. Resultantly, Detective David Fones was dispatched to investigate Mr. Thompson's tip.[3] When Detective Fones arrived at the Molly Pitcher Hotel, he observed appellee sitting in a red car in front of the hotel just as Mr. Thompson had described to Dispatcher Martin.

At approximately 11:00 p.m., Detective Fones approached the red car in which appellee was seated and asked appellee to step out of it. Detective Fones then informed appellee that he had received a complaint that appellee was holding drugs. As Detective Fones began to request appellee's permission to conduct a body search, appellee reached into his jacket pocket and pulled out a plastic baggie containing a white substance which Detective Fones believed to be consistent with crack cocaine. Upon Detective Fones' request, appellee put this plastic baggie back into his pocket. Finally, Detective Fones completed his request to search appellee's person and appellee consented to the search. This search revealed the aforementioned plastic baggie, two film canisters which also contained the same white substance that Detective Fones had observed inside the plastic baggie, and over two hundred dollars in U.S. currency.

Upon closer inspection, Detective Fones discovered that the plastic baggie contained nineteen individually wrapped "rocks" of the white substance. Similar unwrapped rocks were found by Detective Fones inside the film canisters; one canister

3. We note that Mr. Thompson was not an innocent bystander in this case. Mr. Thompson, a drug addict and alcoholic at the time of this incident, testified that he had driven appellee to the Molly Pitcher Hotel in the red Dodge Omni and had left appellee sitting in the car after appellee had fronted him a small amount of crack cocaine to sell to an unidentified person inside the hotel. Mr. Thompson further testified that, instead of selling the cocaine, he had exited the hotel through its back door, walked a few blocks to his house, smoked the cocaine, and then reported appellee to the police. Mr. Thompson admitted that he had planned to deceive appellee in this manner while they had been driving to the Molly Pitcher Hotel.

contained thirty-six rocks and the other contained one hundred, two rocks. Detective Fones' field test of one of these rocks indicated the presence of cocaine. Hence, appellee was arrested and charged with possession of cocaine and possession of cocaine with intent to deliver.

Each of the rocks that had been confiscated from appellee were then sent to the Pennsylvania State Police Crime Lab in Harrisburg for further analysis. Forensic Scientist Robert Wagner performed this analysis. Mr. Wagner's testimony at appellee's trial established the following facts. Mr. Wagner calculated the weight of the nineteen individually wrapped rocks from the plastic baggie to total 2.2 grams.[4] Representative samples of these nineteen rocks were analyzed by Mr. Wagner for cocaine content and this analysis indicated the presence of cocaine in each sample. Mr. Wagner also determined the aggregate weight of the unwrapped rocks that had been found in both of the film canisters. The aggregate weight of the thirty-six rocks from the one canister was 3.9 grams and the aggregate weight of the one hundred, two rocks from the other canister was 12.5 grams. Mr. Wagner tested representative samples of rocks from each film canister and found cocaine in each sample. Mr. Wagner was unable to testify as to the number or aggregate weight of the rocks that he had actually tested for the presence of cocaine. It is apparent from Mr. Wagner's testimony, however, that the rocks he had actually analyzed for cocaine content weighed less than ten grams.

On November 8, 1994, a jury found appellee guilty of possession of cocaine and possession of cocaine with intent to deliver. A sentencing hearing was subsequently conducted on January 3, 1995. At this hearing, no additional evidence was submitted regarding the weight of the cocaine for which appellee had been convicted of possessing with the intent to deliver. The entire transcript of appellee's trial and a labora-

4. Ten of the nineteen individually wrapped rocks were actually weighed by Mr. Wagner. The total weight of these ten rocks was 1.26 grams. From this weight, Mr. Wagner estimated the total weight of the nineteen rocks.

tory report authored by Mr. Wagner explaining his analysis of the rocks of cocaine,[5] however, were made part of the record of this proceeding. At the conclusion of the sentencing hearing, the sentencing court entered appellee's judgment of sentence which pertinently provides as follows:

"AND NOW, this 3rd day of January, 1995, the Defendant, Gerald J. Lawson, now appearing in Court for sentencing with Ellen K. Barry, Esquire, First Assistant Public Defender, and having previously been found guilty following a jury trial of Possession with Intent to Deliver a Schedule II Controlled Substance, namely, cocaine, and the Court being in receipt of a presentence investigation report, and the Court finding by a preponderance of the evidence that the amount of the cocaine possessed by Defendant with intent to deliver it [sic] was at least two grams and less than ten grams, the sentence of the Court, in accordance with the mandatory sentencing provision of 18 Pa.C.S. Section 7508(a)(3)[ (i) ], is that the Defendant pay the costs of prosecution, and a fine of $5,000.00, and that he undergo imprisonment in a state correctional institution for a period of not less than one year nor more than three years, with credit to be given for ten days previously served.

N.T. 1/3/95 at 7–8.[6] On January 23, 1995, the Commonwealth, which had previously noticed its intent to seek a mandatory minimum sentence of three years and a fine of fifteen thousand dollars for appellee pursuant to 18 Pa.C.S.A. § 7508(a)(3)(ii) and had argued for such a sentence at the sentencing hearing, timely appealed from this judgment of sentence.

On appeal, the Commonwealth raises the following single issue for our review:

DID THE SENTENCING COURT ERR WHEN IT REFUSED TO IMPOSE THE MANDATORY MINIMUM

5. This laboratory report was one of the Commonwealth's exhibits admitted into evidence at appellee's trial.

6. No further sentence was imposed pursuant to appellee's conviction of possessing cocaine as it merged with his sentence for possessing cocaine with intent to deliver.

SENTENCE REQUIRED BY 18 PA.C.S.A. § 7508(a)(3)(ii), WHERE THE COMMONWEALTH ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE THAT THE WEIGHT OF THE COCAINE THE DEFENDANT WAS CONVICTED OF POSSESSING WITH INTENT TO DELIVER WAS 18.6 GRAMS?

The Commonwealth's Brief at 4.

■ Essentially, the Commonwealth contends that appellee should have been sentenced pursuant to the mandatory minimum sentencing requirements of 18 Pa.C.S.A. § 7508(a)(3)(ii) instead of 18 Pa.C.S.A. § 7508(a)(3)(i). According to the Commonwealth, the more severe mandatory minimum sentence should have been imposed on appellee by the sentencing court because the evidence of record at the time of his sentencing proved by a preponderance of the evidence that he possessed at least ten and less than one hundred grams of cocaine with intent to deliver. Hence, the Commonwealth asserts that the sentencing court erred when it imposed appellee's judgment of sentence. We agree.

The Commonwealth has the right to appellate review of a judgment of sentence if the sentencing court refuses to apply the mandatory minimum sentencing provisions of 18 Pa.C.S.A. § 7508 where applicable. 18 Pa.C.S.A. § 7508(d). These sentencing provisions pertinently provide as follows:

(3) A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance is coca leaves or is any salt, compound, derivative or preparation of coca leaves or is any salt, compound, derivative or preparation which is chemically equivalent or identical with any of these substances or is any mixture containing any of these substances except decocainized coca leaves or extracts of coca leaves which (extracts) do not contain cocaine or ecgonine shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:

(i) when the aggregate weight of the compound or mixture containing the substance involved is at least 2.0

grams and less than ten grams; one year in prison and a fine of $5,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: three years in prison and $10,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity;

(ii) when the aggregate weight of the compound or mixture containing the substance involved is at least ten grams and less than 100 grams; three years in prison and a fine of $15,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: five years in prison and $30,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity. . . .

18 Pa.C.S.A. § 7508(a)(3)(i), (ii). In deciding which, if any, of these sections require the imposition of the specified mandatory minimum sentence, the sentencing court must determine whether the evidence presented at trial and any additional evidence presented by the Commonwealth or the defendant prior to sentencing preponderantly proves the section's applicability. 18 Pa.C.S.A. § 7508(b). *See Commonwealth v. Carroll,* 438 Pa.Super. 55, 59, 651 A.2d 171, 173 (1994), *allocatur denied,* 541 Pa. 649, 664 A.2d 539 (1995) (where evidence supported sentencing court's finding that preponderance of evidence indicated that defendant possessed less than two grams of heroin with intent to deliver, sentencing court correctly refused to apply 18 Pa.C.S.A. § 7508(a)(2)(i) when sentencing defendant); *Commonwealth v. Jones,* 413 Pa.Super. 482, 486, 605 A.2d 825, 827 (1992), *allocatur denied,* 531 Pa. 652, 613 A.2d 557 (1992) (because Commonwealth proved by a preponderance of evidence that defendant possessed 26.401 grams of cocaine, sentencing court erred in reassessing facts during sentencing process and failing to sentence defendant pursuant to 18 Pa.C.S.A. § 7508(a)(3)(ii)).

Generally, sentencing courts are vested with great discretion and this Court will not vacate a sentence unless an abuse of that discretion occurs. *Commonwealth v. Wood,* 432 Pa.Super. 183, 208, 637 A.2d 1335, 1347 (1994) (citing *Commonwealth v. Smithton,* 429 Pa.Super. 55, 59, 631 A.2d 1053, 1055 (1993)). But, errors of law cannot be committed when a sentence is being imposed. *Id.* at 208, 637 A.2d at 1347–48 (citing *Commonwealth v. Edrington,* 490 Pa. 251, 416 A.2d 455 (1980); *Commonwealth v. Franklin,* 301 Pa.Super. 17, 446 A.2d 1313 (1982)). Thus, a sentencing court lacks the authority to impose a sentence less severe than that which is mandated by 18 Pa.C.S.A. § 7508. *Commonwealth v. Carroll, supra* at 58, 651 A.2d at 172–73. *See Commonwealth v. Logan,* 404 Pa.Super. 100, 104, 590 A.2d 300, 301 (1991), *allocatur denied,* 528 Pa. 622, 597 A.2d 1151 (1991) (General Assembly unequivocally established that drug traffickers be punished according to minimum sentences of 18 Pa.C.S.A. § 7508). Therefore, we must vacate sentences which fail to comply with the mandatory sentencing requirements of that statutory provision. 18 Pa.C.S.A. § 7508(d). *See Commonwealth v. Mayes,* 436 Pa.Super. 1, 6, 647 A.2d 212, 215 (1994) (Superior Court will vacate sentence where sentencing court refused to apply 18 Pa.C.S.A. § 7508).

"[T]he identity of illegal narcotic substances may be established by circumstantial evidence alone, without any chemical analysis of the seized contraband." *Commonwealth v. Minott,* 395 Pa.Super. 552, 562, 577 A.2d 928, 932 (1990) (citing *Commonwealth v. Stasiak,* 305 Pa.Super. 257, 451 A.2d 520 (1982); *Commonwealth v. Leskovic,* 227 Pa.Super. 565, 307 A.2d 357 (1973)). Moreover, when applying the mandatory minimum sentencing requirements of 18 Pa.C.S.A. § 7508 to a defendant from whom a large quantity of a controlled substance has been confiscated by the police upon his arrest, it is well accepted that the narcotics content of the entire confiscated substance is extrapolated from the testing of representative samples of the substance. *Commonwealth v. Perez,* 397 Pa.Super. 574, 578–79, 580 A.2d 781, 783 (1990),

*allocatur denied,* 531 Pa. 652, 613 A.2d 558 (1992); *Commonwealth v. Minott, supra* at 559–60. 577 A.2d at 931. *See Commonwealth v. Gorodetsky,* 178 Pa.Super. 467, 474, 115 A.2d 760, 763–64 (1955), *allocatur denied* (chemist's positive testing of representative samples of morphine tablets was sufficient to find morphine content in all tablets). The policy of the courts of this Commonwealth in cases pertaining to the sale or use of illegal narcotics has been eloquently explained by the Honorable William F. Cercone as follows:

> ... the courts will not ... constrict their fact-finding function in regard to the identity of drugs to a strict scientific analysis, but will rather permit the use of common sense and reasonable inferences in the determination of the identity of such substances.

*Commonwealth v. Minott, supra* at 562, 577 A.2d at 932. We reaffirm this policy and conclude that it applies to the facts of this case.

Instantly, appellee was sentenced pursuant to the mandatory minimum sentencing requirements of 18 Pa.C.S.A. § 7508(a)(3)(i) because the sentencing court specifically found that he possessed at least two and less than ten grams of cocaine with intent to deliver. But, this finding is not supported by the evidence that was before the sentencing court at the time of appellee's January 3, 1995 judgment of sentence. The uncontradicted testimony of Mr. Wagner at appellee's trial singularly established by a preponderance of evidence that appellee possessed at least ten and less than one hundred grams of cocaine. Common sense and reasonable inferences from the evidence dictate this result.

Upon receipt, Mr. Wagner separately weighed the nineteen individually wrapped rocks of crack cocaine from the plastic baggie, the thirty-six rocks from the one film canister, and the one hundred, two rocks from the other canister. Mr. Wagner calculated the aggregate weight of these one hundred, fifty-seven rocks of crack cocaine to be 18.6 grams. After separately weighing the rocks of crack cocaine from the plastic baggie and the two film canisters, Mr. Wagner analyzed representative samples from each group of rocks for cocaine

content. This analysis indicated the presence of cocaine in each sample. Even though Mr. Wagner failed to actually test all of the one hundred, fifty-seven rocks that had been confiscated from appellee by Detective Fones for cocaine content, it is well accepted that the cocaine content of all of these rocks is extrapolated from Mr. Wagner's positive testing of representative samples of them. After all, circumstantial evidence in and of itself may establish the identity of the rocks as crack cocaine even if they were not chemically analyzed for their cocaine content. As such, it is more likely than not that all the rocks from the plastic baggie and two film canisters contained cocaine, not just the representative samples which were actually tested for cocaine content. Thus, for purposes of applying the mandatory minimum sentencing provisions of 18 Pa.C.S.A. § 7508 to appellee, it is irrelevant that Mr. Wagner failed to actually analyze at least ten grams worth of the rocks for cocaine content.[7]

Further, common sense and reasonable inferences from the evidence indicate that appellee possessed all of the rocks of crack cocaine with intent to deliver. Appellee had over two hundred dollars on him when he was arrested. The crack cocaine that was found on appellee was in the form of rocks. After being qualified as an expert in drug enforcement, Detective Fones testified that this is the form in which the distribution of crack cocaine commonly occurs. Detective Fones further testified that the street value of these rocks was approximately three thousand, one hundred, forty dollars. Moreover, no drug paraphernalia was found in appellee's possession by Detective Fones and appellee presented no credible evidence that he had possessed any of the crack cocaine for personal use.[8] Finally, testimony was presented by Mr. Thompson indicating that appellee had fronted him some of the crack cocaine to sell to an unidentified person in

---

7. Indeed, in *Commonwealth v. Minott, supra,* Judge Cercone noted "that we would consider a requirement that each of the fifty packets [of cocaine] be individually analyzed an onerous and expensive burden and one not necessary for the effective functioning of the judicial process." *Id.* at 562, 577 A.2d at 932.

8. At trial, appellee testified that Mr. Thompson, the man who had reported him to the police, had given him the crack cocaine to hold

the Molly Pitcher Hotel. Consequently, it is more likely than not that all of the crack cocaine confiscated from appellee by Detective Fones was possessed by appellee with intent to deliver.

Based upon the foregoing, we hold that the preponderance of the evidence established that appellee was convicted of possessing at least ten and less than one hundred grams of cocaine with intent to deliver. Therefore, the sentencing court abused its discretion in finding that appellee possessed at least two and less than ten grams of cocaine. As such, it erred in sentencing appellee under 18 Pa.C.S.A. § 7508(a)(3)(i) because sentencing courts lack the authority to impose a sentence less than that which is required by 18 Pa.C.S.A. § 7508. Accordingly, we must vacate appellee's judgment of sentence and remand to the sentencing court for the imposition of the legislatively mandated sentence of 18 Pa.C.S.A. § 7508(a)(3)(ii) (a minimum term of three years imprisonment and a fine of at least fifteen thousand dollars) upon appellee.

Judgment of sentence vacated; case remanded. Jurisdiction relinquished.

---

before he had entered the Molly Pitcher Hotel. But, by convicting appellee of both possession of cocaine and possession of cocaine with intent to deliver, it is apparent that the jury discredited this testimony.